**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHANDE CRAWLEY, PENNY CARSON,
LINDA BIRMINGHAM, and
BRITTANY LOCKERT, on behalf of themselves and
all other similarly situated,

               Plaintiffs,                   Case No. 08-14040
                                          Hon. Denise Page Hood

v.

ISMAEL AHMED, in his official capacity
as Director of the Michigan Department of
Human Services, and JANET OLSZEWSKI,
in her official capacity as Director of Michigan
Department of Community Health,

               Defendants.

_____/

**ORDER AND MEMORANDUM OPINION CERTIFYING CLASS ACTION, AND
DENYING DEFENDANTS' MOTION TO DISMISS/SUMMARY JUDGMENT, AND
GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, AND
GRANTING LOCKERT'S MOTION TO INTERVENE AND
MOOTING LOCKERT'S MOTION FOR EX PARTE TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

      This matter is before the Court pursuant to Plaintiffs' Motion for Immediate Class

Certification **[Docket No. 5, filed Sept. 19, 2008]**.  On October 20, 2008, the Defendants filed a

Response **[Docket No. 17]**, to which the Plaintiffs filed a Reply **[Docket No. 21, filed Oct. 29,

2008]**.  This matter is also before the Court on Plaintiffs' Motion for Preliminary Injunction

**[Docket No. 6, filed Sept. 19, 2008]**.  On October 20, 2008, the Defendants filed a Response

**[Docket No. 16]**, to which the Plaintiffs filed a Reply **[Docket No. 20, filed Oct. 29, 2008]**.

This matter is also before the Court on Defendants' Motion to Dismiss and/or Summary Judgment **[Docket No. 15, filed Oct. 16, 2008]**, to which the Plaintiffs filed a Response **[Docket No. 19, filed Oct. 29, 2008]**, and the Defendants filed a Reply **[Docket No. 23, filed Nov. 7, 2008]**.  A motion hearing was held on November 14, 2008.

On May 7, 2009, Proposed Intervenor Brittany Lockert simultaneously filed a Motion to Intervene as a Plaintiff and Class Representative **[Docket No. 24]**, and a Motion for *Ex Parte* Temporary Restraining Order and Preliminary Injunction **[Docket No. 25]**.  The Court now finds that Proposed Intervenor Lockert has established the requirements of Rule 24(a) of the Federal Rules of Civil Procedure, and is therefore entitled to intervene.[1]  Because the Motion for *Ex Parte* Temporary Restraining Order and Preliminary Injunction raises grounds identical to those being resolved below, the Court deems it moot.

## II.    STATEMENT OF FACTS

### A.    Brief Overview

The Named Plaintiffs are individuals with disabilities whose Medicaid was terminated by the Defendants, officials within the Michigan Department of Human Services and the Michigan Department of Community Health.  Plaintiffs aver that their Medicaid benefits were terminated, without a determination of whether Plaintiffs were eligible under a disability-based category.

---

[1]  The Sixth Circuit Court of Appeals has explained that "a proposed intervenor must establish four factors before being entitled to intervene: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest must be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest." *Coalition to Defendant Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007).  Lockert's claim falls squarely within the ambit of Fed. R. Civ. P. 24, which itself must be "broadly construed in favor of potential intervenors." *Id.*

More specifically, the Defendants terminated the Plaintiffs' Medicaid because they no longer qualified for Medicaid under the "FIP-related" eligibility categories – that cover children, young adults, parents and other caretaker relatives who are parenting a dependent child in their care – without reviewing their eligibility under disability-based categories.  The Plaintiffs also claim that they did not receive any meaningful, pre-termination notice or opportunity to be heard regarding their eligibility for Medicaid based on disability.  In particular, the Complaint alleges the following two counts:

> (1) Defendants' pattern and practice of terminating Plaintiffs' Medicaid benefits without first determining whether they are eligible for Medicaid benefits under disability-based categories, violates Plaintiffs' rights under 42 U.S.C. 1396(a)(a)(8) and (10), and under the federal regulations implementing those statutory requirements, 42 C.F.R. 416.916(c) and 435.930(b)...[and that these rights] are enforceable under 42 U.S.C. 1983.

> (2) Defendants' pattern and practice of terminating Plaintiffs' Medicaid benefits without providing them a meaningful pre-termination opportunity to be heard violates Plaintiffs' rights to due process under the Fourteenth Amendment to the United States Constitution and the federal Medicaid laws, 42 U.S.C. 1396a(a)(3) and under the federal regulations implementing those Constitutional and statutory requirements, 42 C.F.R. 431.206-.211 and 435.919.  Plaintiffs' right to a meaningful opportunity to be heard under the Due Process Clause of the Fourteenth Amendment, 42 U.S.C. 1396a(a)(3), and 42 C.F.R. 431.206-.211 and 435.919, are enforceable under 42 U.S.C. 1983.

As the requested relief challenges the distribution and termination requirements of federal Medicaid law, the Court will provide a brief overview of the agencies responsible for Medicaid and regulations governing the distribution of Medicaid resources.

### B.    Administrative Agencies Responsible for Medicaid

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.*, established the federal Medicaid program which is intended to provide financial assistance to needy individuals seeking medical care and treatment.  The legislation creates a cooperative health insurance program

3

jointly funded and administered by the state and federal governments, "to furnish....medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of medical services[.]" 42 U.S.C. 1396-1. "Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services." *Westside Mothers v. Olszewski*, 454 F.3d 532, 535 (6th Cir. 2006).

Michigan has authorized its participation in the federal Medicaid program through Mich. Comp. Laws. ("MCL") §§ 400.105, *et seq*. The United States Department of Health and Human Services ("HHS") oversees the state's administration of Medicaid benefits to ensure that the state is in compliance with federal law and therefore should receive matching federal funds. *See Harris v. McRae*, 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980). Defendant, Janet Olszewski, is the Director of the Michigan Department of Community Health ("MDCH"), which is the single state agency responsible for administration of the federal and state jointly funded Medicaid Program. 42 U.S.C. § 1396a(a)(5). Defendant, Ismael Ahmed, is the Director of the Michigan Department of Human Services ("DHS"), which is responsible for administration of public assistance programs at local levels including making determinations of whether applicants meet the eligibility requirements of Medicaid. These Medicaid eligibility policies and procedures are jointly developed by DCH and DHS and are published in the DHS policy manuals, including the Program Eligibility Manual ("PEM"), the Program Administrative

4

Manual ("PAM") and the Program Reference Tables.[2]

###### C.    Medicaid Eligibility Requirements and Pertinent Classifications

Generally, the Medicaid program provides payments for medical costs incurred by individuals that fall within the statutory eligibility requirements, including certain low-income children, families with children, pregnant women, disabled adults, and elderly people who meet financial and non-financial eligibility criteria. *See* 42 U.S.C. 1396a(a)(10)(A), 1396a(a)(10)(C), 1396a(e), 1396a(l)(2)(A)-4(A), 1396d(a), 1396r-6(a), 1396u-1(b). The Michigan Department of Human Services applies the same eligibility requirements to determine if an applicant qualifies for one of the many health care programs that are administered by the Michigan Department of Community Health. While there are several such Medicaid sub-programs, they are generally grouped in two broad subdivisions: Family Independence Program ("FIP") and Supplemental Security Income ("SSI"). The FIP category usually covers families with dependent children, caretaker relatives of dependant children, persons under age 21, and pregnant and recently pregnant women. PEM 105 at 1. The SSI category covers persons who are elderly, disabled, or blind. *Id.* Eligibility based on such a disability further requires a determination by the Social Security Administration, or by a state Medical Review Team, accordingly, individuals who receive SSI income are automatically eligible for Medicaid. 42 C.F.R. § 435.120. To be eligible for Medicaid disability benefits, an applicant must meet "the eligibility standards for supplemental security income under title XVI [of the Social Security Act]." MCL

---

[2] All of the above named manuals are available on the Department of Human Services website, Policy and Procedure Manuals, http://www.michigan.gov/dhs-manuals (last updated Nov. 1, 2008).

400.106(1)(b)(vi) (citing 42 U.S.C. §§ 1381-1385).[3]  Of particular importance in the instant action is whether a recipient may transition from an FIP-related category to an SSI-related category upon termination of FIP eligibility.

In either the SSI or FIP category, a recipient of benefits may be classified as "categorically needy" or "medically needy."  If an applicant is "categorically needy," he or she is entitled to both financial and medical assistance.  This group includes individuals who automatically qualify for Medicaid, like SSI recipients, and people who qualify as a "Low Income Family," under the AFDC program.[4]  In Michigan, families with children that receive FIP cash assistance automatically qualify for Medicaid under the categorically needy designation as a Low Income Family.  A "medically needy" designation means that the recipient is only eligible for medical benefits, and does not receive SSI or FIP cash benefits.

D.    Application for Medicaid Benefits

When applying for Medicaid in Michigan, individuals can apply for all Medicaid categories pursuant to the DHS Assistance Application (form DHS 1171).  This application seeks general information regarding the applicant's residence, family, medical history, medical coverage, assets, vehicles, employment, income, disability benefits, dependent care expenses, and voter registration. [ *See*, *e.g.* DHS Assistance Application, Form DHS 1171, Compl. Ex. A]. The application helps the state to determine whether a person qualifies under a particular

---

[3] Defendants follow the same disability eligibility determination regulations as promulgated by the Social Security Administration.  20 C.F.R. § 416.920(a)(4)(i)- (4)(v) provides the five step inquiry required to determine if an applicant is disabled.

[4] AFDC stands for Aid to Families with Dependent Children (the name of the cash assistance program under Title IV-A of the Social Security Act prior to the passage of the Temporary Assistance for Needy Families block grant program on July 16, 1996).

Medicaid category and for a particular sub-program.  Michigan Medicaid Policy provides that, "Persons may qualify under more than one MA [Medicaid Assistance] category.  Federal law gives them the right to the most beneficial category.  The most beneficial category is the one that results in the eligibility or the least amount of excess income." PEM 105 at 2.

DHS has additional procedures for obtaining and reviewing medical information when an individual's eligibility for a disability-based Medicaid category is being considered.  PEM 260, PAM 815.  These additional procedures are employed when the applicant is not automatically qualified because he or she is already been found disabled by the Social Security Administration under the SSI or the Social Security Retirement, Survivors, and Disability Insurance programs. PEM 150, and 260; PAM 815.  Michelle Best, a State Administrative Manager for the Michigan DHS, testifies that claimants who are not automatically approved for disability-based Medicaid category, must fill out an application for disability-based benefits. [Affidavit of Michelle A. Best, Oct. 20, 2008 ("Best Affidavit")]  On this form, the claimant lists doctors and any other relevant information that would assist in making a determination for Medicaid, and also signs blank medical releases in order to obtain medical records.  This may result in a referral to a clinic or doctor for an evaluation.  The application is then referred to a Medical Review Team, composed of a physician and a medical consultant, who reviews the file and either finds disability or denies the application.  However, Plaintiffs contend that there is no additional application for Medicaid benefits other than the initial DHS 1171 form, and that Defendants' caseworkers are instructed to request any additional information if it is needed to review the applicant's eligibility for Medicaid based on disability.

     **E.**      **Named Plaintiffs**

7

Plaintiffs claim that at the time of the filing of this action each of the Named Plaintiffs had been terminated from their FIP-related Medicaid and were forced to rely Genesee Health Plan B ("GHP-B") for medical coverage, despite their eligibility for SSI-related Medicaid benefits. Plaintiffs posit that GHP-B provides very limited medical coverage for uninsured residents of Genesee County. GHP-B does not cover many of the medical services that are available under Medicaid, including inpatient and outpatient hospital care, emergency room services, medical transportation assistance, dental or optical services. While GHP-B does provide for some specialist care, diagnostic testing, mental health services, and prescription medications, it requires higher payments and increased co-payments than most Medicaid recipients pay. At the time of filing, the following three Plaintiffs were unable to work because of their medical problems, and were relying on GHP-B medical coverage:

(1)    <u>Chande Crawley</u>

Chande Crawley is a Genesse County, Michigan resident, who lives with her husband and 18-year-old daughter. Crawley applied for Medicaid on April 28, 2008, after two hospitalizations for liver failure and severe abdominal infections. Crawley indicates that prior to her liver failure that her family was suffering financial hardship, despite the fact that both she and her husband were employed. Crawley claims that throughout the months of April, May, and June of 2008, she left messages with her DHS casework in an effort to obtain Medicaid coverage so that she could receive treatment for her liver failure and abdominal infections. Crawley would occasionally receive notices from DHS regarding her Medicaid eligibility, but around June 2008 her caseworker notified her that she "would no longer be able to qualify by submitting bills showing that [she] had met [her] deductible or spenddown amount, because [her] daughter

8

was 18 and was graduating from highschool." [Declaration of Chande Crawley, September 18, 2008 ("Crawley Declaration"), Mot. for Prel. Inj., Ex. A].  On July, 18, 2008, DHS officially notified Crawley that her Medicaid coverage would end for the same reason.

Crawley avers that her caseworker requested that she complete a new Medicaid application, but not to mail it in until the end of July 2008.  Crawley claims that her caseworker was aware of her liver failure as early as April 2008, "but never asked [her] for any medical records or release forms until [she] sent in the new application at the end of July." [Crawley Declaration].  Crawley claims that the lapse in Medicaid coverage caused her to miss a series of appointments at the Henry Ford Hospital Transplant Institute that were necessary to be placed on the liver transplant waiting list.  At that time, Crawley was relying on GHP-B, which did not cover treatment at Henry Ford Hospital Transplant Institute, nor certain prescription medications.

On August 28, 2008, the Social Security Administration sent Crawley a  notice that indicated she was disabled pursuant to the SSI guidelines.  After conversations with counsel, Crawley gave the notice to her DHS caseworker on September 3, 2008.  The Defendants contend that Crawley was approved for disability related Medicaid on September 17, 2008, and is a current Medicaid recipient. [Best Affidavit].

(2)     Penny Carson

Penny Carson is a Genesee County, Michigan resident, who lives with her elderly brother, and 18-year-old son.  Penny Carson claims that she has "both mental and physical problems that make it impossible for [her] to work, including glaucoma, depression and bi-polar disorder, high blood pressure, sleep apnea, high cholesterol, low thyroid, diabetes, and joint

9

problems." [Declaration of Penny Carson, September 18, 2008 ("Carson Declaration"), Mot. for Prel. Inj., Ex. B].  Carson also received surgery on her left foot and right knee, which restricts her ability to walk.

According to Carson, DHS stopped her cash assistance and Medicaid because her son graduated from high school.  She claims that her only income since June 2008 has been $298.00 a month in food stamps because her FIP-related cash benefits were terminated.  Carson alleges that during an annual review of her eligibility assistance in March 2008, she indicated that she was disabled and appealing her SSI case.  Carson further avers that no one from DHS asked her for her medical records or to sign a medical release form.

Carson alleges that her GHP-B medical coverage does not permit her to continue treatment with her usual therapist.  Carson also indicates that GHP-B does not cover all of her medications, specifically those prescribed for her depression and leg cramps.  After speaking with counsel, Carson reapplied for Medicaid and state disability assistance on September 5, 2008.  Defendants contend that if her application based on disability is approved, she may obtain retroactive coverage to July 1, 2008. [Best Affidavit].

(3)     Linda Birmingham

Linda Birmingham received Medicaid and FIP cash assistance for several years beginning in 2005.  She qualified for cash assistance because of her 13-year-old son.  Linda claims to be disabled because of a "degenerative disk disease in [her] neck, which causes numbness in [her] arms and hands; lower back problems that result in severe pain down [her] left hip, leg, knee and ankle; bipolar disorder and depression; osteoarthritis; and carpal tunnel syndrom." [Declaration of Linda Birmingham, September 18, 2008 ("Birmingham Declaration"),

10

Mot. for Prel. Inj., Ex. C].  Birmingham also had two lower back surgeries for lumbar laminectomy with fusion, in 1988 and 1990.

In June of 2008, Birmingham received a notice from DHS indicating that she was no longer eligible for Medicaid because the court had removed her son from her home. Birmingham claims that her Medicaid was terminated despite indicating that she was disabled in her 2007 Medicaid application.  Birmingham further avers that after seeking information about receiving Medicaid and cash assistance based on her disability, the case worker responded that "she didn't know what [Birmingham] was talking about and [she] could not get Medicaid or cash assistance now that [her] son [was] not living with [her]." [Birmingham Declaration]. Birmingham states that it has been much more difficult to get her necessary health care under the GHP-B, and that she had to stop seeing her usual doctor.  Birmingham further alleges that she now is unable to afford all of her prescription medication because of the increased co-payment rates.

The Defendants contend that Ms. Birmingham applied for disability related Medicaid on July 23, 2008.  This application was denied by the Medical Review Team on September 15, 2008, based on a finding that Birmingham was not disabled. [Best Affidavit].

## III.    STANDARD OF REVIEW

The Defendants' motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure which allows a defendant to move for dismissal of all or part of a complaint if it fails to state a claim upon which relief may be granted.  When analyzing the sufficiency of a complaint, the Court applies the principle that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 554, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A plaintiff is not required to provide "heightened fact pleading of specifics," but must allege facts sufficient to "raise a right to relief above the speculative level."  *Id.* at 555.  Additionally, all of a plaintiff's factual allegations must be taken as true in considering a motion to dismiss.  *Ricco v. Potter*, 377 F.3d 599, 603 (6th Cir. 2004).

In the alternative, the Defendants have also brought a motion for summary judgment under Rule 56.  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.

In reviewing a party's motion for summary judgment, all evidence must be viewed in a light most favorable to the nonmoving party, and summary judgment is appropriate whenever the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 332.  Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## IV.    LAW & ANALYSIS

12

A.        **Class Certification**

Plaintiffs proffer that the instant action would best be brought as a class action suit pursuant to Fed. R. Civ. P. 23, as the proposed class meets all of the requirements under the rule. However, the Defendants contend that the Plaintiffs' proposed class does not establish numerosity, commonality, typicality, or adequacy of representation, and as such class certification is unwarranted.

The principal purpose of class actions is to achieve efficiency and economy of litigation, both with respect to the parties and the courts. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). The Supreme Court has observed that, as an exception to the usual rule, litigation is conducted by and on behalf of individual named parties, "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id.* at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). The Supreme Court directs that, before certifying a class, district courts must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *See Falcon*, 457 U.S. at 161. The Sixth Circuit has stated that district courts have broad discretion in deciding whether to certify a class, but courts must exercise that discretion within the framework of Rule 23. *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Plaintiffs' proposed class must first satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. If each of these four prerequisites is established for the class, Plaintiffs must then show that the class can be maintained under one of the theories available

13

under Rule 23(b).  *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976).  The burden

of establishing all of the necessary requirements rest on the party seeking class certification.  *In*

*re Am. Med. Sys. Inc*, 75 F.3d at 1086.

Although a court considering class certification may not inquire into the merits of the

underlying claim, a class action may not be certified merely on the basis of its designation as

such in the pleadings.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40

L. Ed. 2d 732 (1974); *In re Am. Med. Sys., Inc.*, 75 F.3d at 1069.  In evaluating whether class

certification is appropriate, "it may be necessary for the court to probe behind the pleadings...",

as the issues concerning whether it is appropriate to certify a class are often "enmeshed" within

the legal and factual considerations raised by the litigation.  *Falcon*, 457 U.S. at 160; *see also In*

*re Am. Med. Sys., Inc.*, 75 F.3d at 1079; *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200

(6th Cir. 1974).

(1)    Class Definition

The Named Plaintiffs seek an order certifying this matter to proceed as a class action, the

proffered class is described as follows:

> all former, current and future Michigan Medicaid recipients with disabilities
> whose Medicaid eligibility was terminated within three years prior to the date of
> this complaint (or will be terminated in the future) because they no longer qualify
> for Medicaid under FIP-related eligibility categories, without first being evaluated
> for eligibility for Medicaid based on disability, and without being provided a pre-
> termination notice and opportunity for a hearing concerning their eligibility for
> Medicaid based on disability.

However, as a preliminary matter, the Defendants contend that the above referenced class

definition is overly broad.  In particular, Defendants argue that because the class definition

incorporates individuals who only allege their disability, the proposed class may contain

14

members who have not been, and will not be, harmed by the acts of the Defendants.  As a result the Defendants submit that a proper class will exclude persons who have not been harmed by the challenged actions.  In sum, Defendants claim that not all FIP-related Medicaid recipients who allege disabilities will be found disabled for the purposes of SSI-related Medicaid.  In response, Plaintiffs argue that a determination of an applicant's disability, regardless of the outcome, has no bearing on his or her pre-termination right to continued benefits "while the state reviews and determines whether the individual is eligible under other categories."  Plaintiffs further submit that all of the individuals in the proposed class have been harmed because all have been prematurely terminated from Medicaid, without pre-termination review and without notice that gives them an opportunity to be heard on the issue of disability, in violation of the law.

"In order for there to be a proper class action it is... axiomatic that there must be a class." *Barnes v. Board of Trustees*, 369 F. Supp. 1327, 1332 (W.D. Mich. 1973).  Before engaging in a "rigorous analysis" of the Rule 23(a) factors, this Court must first determine that a sufficiently defined "class" exists.  7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1760 (3d ed. 2006).  "In order to determine whether the class action is proper, the district court must determine whether a class exists and if so what it includes.  Although not specifically mentioned in the rule, the definition of the class is an essential prerequisite to maintaining a class action."  *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976).  Consequently, this Court must first examine whether a precisely defined class exists and then examine whether the Named Plaintiffs are members of the proposed class.  *Turner*, 2008 U.S. Dist. Lexis 2410 at *26 (citing *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (discussing membership in a proposed class)).

15

While class definitions vary depending on the particular situations of the case, important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner.  *See Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986).  The class definition is of "critical importance as it identifies the persons (1) entitled to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b)(3) action."  *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 156 (D. Kan. 1996).  Where extensive factual inquiries are required to determine whether individuals are members of a proposed class, class certification is likely improper.  *Snow v. Atofina Chemicals, Inc.*, 2003 U.S. Dist. Lexis 27295, 2006 WL 1008002, at *8-9 (E.D. Mich. March 31, 2003).  Greater precision is required in defining a class when compensatory relief is sought, rather than injunctive or declaratory relief.  *Zapata*, 167 F.R.D. at 156.

Under the present circumstances, the Court finds that Plaintiffs have advanced a sufficiently defined class for the purposes of a Rule 23(b)(2) class.  Contrary to Defendants' assertions, the class appears to be limited to individuals that are harmed by a premature termination of Medicaid benefits.  The Court does recognize that it includes prospective members, but only those who "will be terminated in the future."  However, the inclusion of persons who may not be identifiable at present, or even the fact that class membership may change by the end of trial does not serve as an impediment to class certification.  *Caroline C. ex rel. Carter v. Johnson*, 174 F.R.D. 452, 461 (D. Neb. 1996) (listing cases in which courts have certified or affirmed the certification of classes that included persons who would be subjected to unlawful policies in the future).  The Court also finds that the Defendants' argument

16

inappropriately limits the alleged harm to individuals whose FIP-related Medicaid was

terminated despite being eligible for the SSI-related category; yet, the alleged harm is a

termination of FIP-related Medicaid benefits, regardless of the final adjudication of disability.

The Court is also unpersuaded by the Defendants' reliance on *Baxter v. Mintner*, 378 F.

Supp. 1213 (D. Mass. 1974), as that court specifically noted that "[t]he plaintiff did not press for

formal certification of the class, nor did she seek discovery to assist her in establishing the

existence of a class." *Id.* at 1215.  That court was forced to rely on stipulated facts, a single

statistical reference, and mere allegations of the existence of a class.  *Id.* at 1215-16.

Conversely, the Named Plaintiffs in the instant action have submitted a sufficiently defined

class, additional statistics, and have formally moved for class certification.  This Court finds

merit in the Plaintiffs' reliance on *Crippen v. Kheder*, 741 F.2d 102 (6th Cir. 1984).  In *Crippen*,

the Sixth Circuit ruled that persons who receive benefits under the Medicaid Act are entitled to

the continued receipt of Medicaid benefits pending a final determination of ineligibility.  *Id.* at

107.  In so ruling, the Court permitted the certification of a similar, if not more broadly defined

class:

> ...any and all persons who are treated by the state as presumptively ineligible for
> medicaid solely because their SSI has been terminated, regardless of whether such
> persons receive the due process notice and opportunity for hearing.

*Id.* at 104.  As such, this Court finds that the Plaintiffs' proffered class is well-defined and not

overly broad.

(2)   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  In *Senter*, the Sixth Circuit explained that there is "no

17

specific number below which class action relief is automatically precluded." 532 F.2d at 523 n.24 (6th Cir. 1976). Likewise, there is "no automatic cut off point at which the number of plaintiffs make joinder impractical." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). However, the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy [numerosity]." *Id.* Apart from class size, other case-specific factors that courts should consider in determining whether joinder is impracticable include: judicial economy, geographical dispersion of class members, ease of identifying putative class members, and practicality with which individuals putative class members could sue on their own. *See* Alba Conte & Herbert Newberg, 1 Newberg on Class Actions § 3:6 (4th ed. 2003)("Newberg"); *see also Cannon v. GunnAllen Fin., Inc.*, 2008 WL 4279858, 2008 U.S. Dist. Lexis 86623, at *12 (M.D. Tenn. Sept. 15, 2008).

In the instant matter, Plaintiffs assert that the exact number of class members is in the exclusive control of the Defendants, but still provide the following:

> Upon information and belief, at least 5% of the individuals who are terminated from full coverage under FIP-related Medicaid categories each year are applying for SSI or Social Security disability benefits and/or have disclosed to DHS that they are disabled or unable to work. Therefore, at least 200 individuals each year are subjected to the policy and practice challenged in this case and at least 600 individuals have been subjected to the policy and practice within the past 3 years.

The Plaintiffs arrive at the above figure based upon: (1) the total number of Michigan adults who receive Medicaid based upon FIP-related eligibility categories; (2) an approximate number of individuals who are on FIP-related Medicaid who are also in the process of qualifying for a disability through the Social Security Administration; (3) an approximate number of individuals who are terminated from various FIP-related Medicaid categories because they no longer have dependent children, or no longer qualify as a child or young adult; (4) an approximate number of

18

individuals who are terminated from various FIP-related Medicaid categories because they are no longer financially eligible under FIP-related methodologies.[5]  The Plaintiffs further argue that the numerosity requirement has been met based upon other factors such as the fluidity, geographic diversity, and the financial inability of the class members to bring individual claims.

The Defendants contend that the Plaintiffs' class is unable to establish numerosity by relying on speculative data.  The Defendants also rely on *Hill v. Heckler*, 592 F.Supp. 1198 (W.D. Okla 1984) to demonstrate that a similar numerosity rationale had been rejected by that court.  The Defendants also provide their own statistical data in order to establish that Plaintiffs' proffered class is "statistically unlikely" to establish a medical disability for purposes of SSI-related Medicaid benefits.  This Court is unpersuaded by the Defendants' arguments.  The Court first notes that the Defendants' reliance on *Hill v. Heckler* is misplaced, as it again rests on the assumption that the proffered harm is the wrongful termination of Medicaid benefits when an applicant would properly qualify as disabled, instead of the termination of Medicaid benefits prior to a determination that the applicant would have qualified under a disability-based Medicaid benefits.  Moreover, the Defendants' Response provides further statistical data that in itself appears to establish the element of numerosity.

On balance, the Plaintiffs are correct in that a conservative reading of statistics, combined with other realties, demonstrate that joinder would be impracticable.  After combining both parties' statistical data, the Plaintiffs submit the following figures:

(1) the MRT would decide that 50 of the 200 recipients (25%) claiming disability, are in fact disabled, and thus were entitled to Medicaid even under the

---

[5] Plaintiffs submit that the above approximations were derived from the DHS report on Medical Assistance (MA) Closures from Jan. 2007 through August 2007.

Defendants' analysis of the law.

(2) the MRT would decide that 100 of the 200 recipients claiming disability are
not entitled to disability-based Medicaid; but those recipients nevertheless would
be entitled to continued Medicaid while the review was being conducted and they
would be entitled to a pre-termination notice and opportunity to be heard before
the termination based on lack of disability went into effect.

The proffered class is also composed of individuals across the state of Michigan, as the

challenged policy is a statewide policy.  Another factor in favor of numerosity is the practicality

by which putative class members could sue on their own, under the instant circumstances most

of the class members have little to no income, which most likely makes it difficult to sue on their

own.  Consequently, this Court finds that the element of numerosity has been met, as "the class

is so numerous that joinder of all members is impracticable."

(3)    <u>Commonality</u>

In order to establish commonality, the Plaintiffs must demonstrate that "there are

questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Sixth Circuit has

characterized the commonality requirement as "qualitative rather than quantitative" and has

observed that "[v]ariations in the circumstances of class members are acceptable, as long as they

have at least one issue in common."  *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1080; *Bacon*, 370

F.3d a 570.  This common issue must be one "the resolution of which will advance the

litigation."  *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Plaintiffs assert that there are two questions of law that are common to the class:

(1) Whether the Defendants' termination of full coverage Medicaid without a
review of the class members' eligibility based on disabilities violates their rights
under the federal Medicaid statute, 42 U.S.C. 1396a(8) and (10) as implemented
by C.F.R. 435.916(c) and .930(b); and

(2) whether the Defendants' termination of Medicaid without providing pre-

20

> termination notice and opportunity to be heard regarding disability-based
> eligibility violates class members' rights under the due process clause of the
> Fourteenth Amendment to the Constitution, the federal Medicaid statute, 42
> U.S.C. 1396a(3), and implementing regulations, laws implementing that provision, and 42 C.F.R. 431.2

The Defendants again surmise that to fit within the Plaintiffs' proffered class would "require a separate adjudication of disability" as to each class member. [Resp. to Mot. to Certify Class, p. 6]. Defendants further argue that the potential factual distinctions between the proffered class members "are more varied and disparate than is appropriate to the class action device." [*Id.*, p.8]. This Court finds Defendants' reasoning unpersuasive.

The Defendants continue to insist that the class definition proposed by Plaintiffs requires an adjudication as to whether a putative member would qualify for disability under 20 C.F.R. § 416.920(a)(4)(i)-(4)(v) (setting forth a five step determination of disability for purposes of the Social Security Administration). While not yet addressing the merits of this argument, the Court finds that the Plaintiffs are not advancing the *legal* definition of disability for the purposes of class certification. Under the Plaintiffs' proposed class definition, no adjudication as to legal disability is required; instead, Plaintiffs seek to represent a group of recipients "who have indicated or 'claimed' that they have a disability that prevents them from working." [Reply to Resp. to Certify Class, p.3]. As such, Defendants' arguments regarding separate adjudications for each class member are inapposite. The Court also notes that the Defendants' cited factual variations between the class members will not affect the Court's resolution of the proposed legal question. Accordingly, this Court finds that the proposed legal questions are common to the class for purposes of Rule 23(a)(2).

        (4)   <u>Typicality</u>

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of

claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Rule 23(a)(4)'s typicality requirement

ensures that the representative party adequately protects the interests of the proposed class.  *See*

Newberg § 3:13 ("Typicality determines whether a sufficient relationship exists between the

injury to the named plaintiff and the conduct affecting the class, so that the court may properly

attribute a collective nature to the challenged conduct.").  The Sixth Circuit has similarly

concluded a proposed class representative's claim is typical if "it arises from the same event or

practice or course of conduct that gives rise to the claims of other class members, and if his or

her claims are based on the same legal theory."  *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082.

Consequently, in situations where typicality is found, "the representative's interests will be

aligned with those of the represented group, and in pursuing his own claims, the named plaintiff

will also advance the interest of the class members."  *Id.*  In *Sprague*, the Sixth Circuit described

the typicality requirement, "as goes the claim of the named plaintiff, so go the claims of the

class."  133 F.3d at 399.

Plaintiffs submit that the position of the Named Plaintiffs is no way antagonistic to the

unnamed class, as both share a common interest in "having continued Medicaid health care

coverage and in having it terminated only in accordance with the protections of the federal

Constitution and Medicaid laws." [Motion to Certify Class, p. 10]  However, the Defendants

contend that because the potential class includes so many factual variations, and complex

policies and programs, the interest of one Medicaid sub-group may come into conflict with the

interest of another sub-section.  In support of this contention, the Defendants provide several

potential distinctions: (1) the myriad of reasons eligibility may terminate; (2) certain classes of

eligibility that automatically open based on the termination of a specific FIP-related sub-groups;

22

(3) the "categorically needy" and "medically needy" group designations; (4) and a federally

mandated priority that is accorded to categorically needy Medicaid recipients.  The Defendants

further allege that these conflicts extend to the three Named Plaintiffs as Carson and

Birmingham are categorically needy, but Crawley was only medically needy.  The Court finds

Defendants' reasoning unpersuasive.

After examining the requested relief of the Named Plaintiffs and putative class, it appears

that it arises in response to the Defendants allegedly unlawful conduct of terminating Medicaid

benefits prior to a determination of disability.  While the Court notes Defendants' multiple

divisions and cited differences, it is unable to ascertain how these differences make the

representative parties' claims atypical, or create a conflict in regards to the legal claims asserted

by the Plaintiffs.  In particular, it appears that both the representative parties and the proffered

class members would benefit from sustained Medicaid benefits during the determination period,

regardless of their particular categorization, or the priority accorded to their specific designation

as either categorically needy or medically needy.  Accordingly, this Court finds that the claims

and defenses of the representative parties are typical of the claims and defenses of the class.  *See*

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561-62 (6th Cir. 2007) (where the Sixth Circuit found

that, despite variations in the individual circumstances of each class member, where the claims

of the proposed class (1) arose from the same "allegedly deceptive" conduct and (2) were

premised on the same "allegation," the alignment between the interests of the class

representatives and the proposed class was sufficient for the typicality threshold to be satisfied.).

In reference to this proposed class, the requirements of typicality are satisfied.  The

claims of the class representatives and the claims of the proposed class arise from the same

alleged unlawful termination of Medicaid benefits.  Further, the claims of the Named Plaintiffs

and the claims of the proposed class proceed on the basis of the same legal theory – that the

Defendants' termination of the Medicaid benefits prior to a determination that the applicant is

disabled, without first being evaluated for eligibility based on disability, and without first being

provided a pre-termination notice and opportunity for a hearing concerning their eligibility for

Medicaid based on disability –  violates federal Medicaid law and the Constitution.  All of the

Named Plaintiffs' declarations evidence an identical harm based on this alleged unlawful

conduct.  Accordingly, the interest of the class representatives and the class align and, by

bringing this litigation, the class representatives will necessarily advance the interests of the

absent class members.  Consequently, the Plaintiffs have met their burden of establishing

typicality.  *See In re Am. Med. Sys. Inc.*, 75 F.3d at 1082.

> (5)    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Rule 23(a)(4) inquiry "serves to

uncover conflicts of interest between named parties and the class they seek to represent."  *Beatie*,

511 F.3d at 562.  To alleviate these conflict of interest concerns, the plaintiffs must show that (1)

the class representatives have a common interest with the rest of the class; and (2) the class

representatives will vigorously prosecute the interests of the class through qualified counsel.  *Id.*

at 562-63.  The common interest criterion necessitates the absence of antagonism or conflict of

interest between the class representatives and the other members of the class they seek to

represent.  *See In re Am. Med. Sys.,* 75 F.3d at 1083.  The second criterion inquires into the

competency of the counsel.  *See id.*

24

As to the first criterion, the Plaintiffs argue that there is no antagonism between the class representatives and the rest of the proposed class because all of the Plaintiffs seek to prove that Defendants' alleged actions violate both federal Medicaid law and the federal Constitution. However, Defendants contend that the "sub-groups in the proposed class will potentially be at war with one another in competition for scarce medical assistance resources," as evidenced by the distinctions between the three named Plaintiffs. [Resp. to Mot. to Certify Class, p.11].  The Defendants further allege that the subgroups differ in terms of notice.  More specifically, Defendants argue that depending on the type of FIP-related benefits being received that some notice is inherent, like parents whose benefits are terminated because their child reaches the age of 18, while other terminations may be unforeseeable, like when the courts remove a child from the parent's home.  As discussed in the typicality requirement, the Court is unable to ascertain how these distinctions create a conflict of interest between the representative parties and the unnamed class members.  The Plaintiffs' challenge does not appear to contest the priority that Defendants accord to those designated categorically needy, but instead focuses on the termination of pre-set benefits, regardless of the amount.  Nor does the Court find that there is any conflict based on notice, inherent or actual, that would place the parties in conflict.

As to the second criterion, the Plaintiffs assert that the class counsel has experience in class actions, and has provided resumes that demonstrate sufficient experience in class action suits related to Medicaid.  The Defendants do not challenge the Plaintiffs on this issue. Accordingly the Plaintiffs have satisfied the requirements of Rule 23(a)(4).

Having found that the Plaintiffs have demonstrated the existence of each Rule 23(a)'s prerequisites, the Court must now determine whether the Plaintiffs' case also falls within at least

25

one of the subcategories of Rule 23(b).  *See In re Am. Med. Sys.*, 75 F.3d at 1079.

    (6)  Certification under Rule 23(b)

   In addition to meeting the four requirements of Rule 23(a), a proposed class must meet at least one of the requirements of Rule 23(b).  Here, the Plaintiffs suggest that the certification of their proposed class is appropriate under Rule 23(b)(2).  Certification under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

   The Plaintiffs assert that this case should be certified under Rule 23(b)(2) because the Defendants have exhibited an unlawful pattern and practice that applies to all of the proposed class members.  The Plaintiffs further assert that Rule 23(b)(2) certification is appropriate as Plaintiffs only seek injunctive and declaratory relief, in particular that Medicaid benefits would continue for class members until the Defendants determine if class members are entitled to benefits under a disability-based category, and institute notice, and an opportunity to be heard regarding disability-based eligibility.  The Defendants contend that certification under Rule 23(b)(2) is not proper because the members of the proposed class are not uniformly injured or uniformly treated.

   This Court finds that the proposed class is well-suited for certification under Rule 23(b)(2).  The Plaintiffs ask this Court to determine whether the Defendants' actions constitute violations of Medicaid related statutes and the Due Process clause of the Fourteenth Amendment.  The putative class members request that this Court order Defendants to cease the alleged violations.  Additionally, the Plaintiffs only seek declaratory and injunctive relief.

Accordingly, the Court finds that Rule 23(b)(2) certification is appropriate.

**B.      Preliminary Injunction & Motion to Dismiss/ Summary Judgment**

The decision to grant injunctive relief is within the discretion of the district court. *Golden v. Kelsey -Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996).  A preliminary injunction serves to protect the status quo pending a final determination of the lawsuit.  *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981).  In granting a preliminary injunction, a court must determine whether: (1) the plaintiff has shown a strong likelihood of success on the merits; (2) irreparable harm could result to the plaintiff if the preliminary injunction is not issued; (3) the threatened harm to the plaintiff outweighs the threatened harm that the injunction may inflict upon the defendant; and (4) the granting of the preliminary injunction will serve the public interest.  *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003).  Although these four considerations are not obligatory, they are factors that must be balanced in order to weigh the claims of irreparable harm and likelihood of success on the merits by the aggrieved party.  *Id.*  The Sixth Circuit Court of Appeals has described the issuance of a preliminary injunction as an "extraordinary remedy" that "should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it."  *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  The Court is not required to make specific findings as to each of the factors if fewer factors are dispositive of the motion. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing inter alia *In re De Lorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)). As the Defendants have moved for summary dismissal, the Court will consider the pending motion under the first prong of the preliminary injunction analysis.

27

(1)    <u>Likelihood of Success on the Merits</u>

(a)    *Count I*

In reference to Count I, Plaintiffs submit that federal law requires Defendants to review the Plaintiffs' eligibility for disability-based SSI-related Medicaid eligibility categories when they no longer are eligible to receive Medicaid under FIP-related eligibility categories, before terminating their Medicaid.  In essence, Plaintiffs argue that federal Medicaid law prohibits the state from terminating an individual's Medicaid benefits based solely on the fact that they no longer qualify under one particular category, unless eligibility under the other categories has been ruled out as well.  In support of this legal theory, Plaintiffs rely on 42 U.S.C. 1396(a)(8) and (a)(10), which provide:

> (a)(8) [A State plan for medical assistance must] – provide that all individuals wishing to make an application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals
> ...
> (a)(10)(A) [A state plan for medical assistance must–] provide for making medical assistance available, including at least the care and services listed in paragraphs (1) through(5), (17) and (21) of Section 1396(d)(a) of this title to ... all individuals [qualifying under the enumerated provisions (i)(I)-(VII)].

Plaintiffs further rely on the accompanying Department of Health and Human Services' regulation, which indicates that, "[t]he agency must – [c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." 42 C.F.R. 435.930(b).  Plaintiffs argue that Defendants' failure to adhere to the above laws, Sixth Circuit precedent upholding these provisions, and their own internal policies warrants the imposition of the requested injunctive relief.  However, Defendants argue that Plaintiffs are not entitled to the relief requested as neither the regulations nor the implementing statutes on which they rely are

enforceable under § 1983.

      (i)      Whether §§ 1396(a)(8) and (a)(10) Create Enforceable
                  Rights in Plaintiffs

In both their Response and Motion for Summary Judgment, Defendants contend that §
1983 does not support such an action because the statutes on which the Plaintiffs rely were not
intended to confer a private enforceable right of action.  Defendants further contend that in the
absence of a clear and unambiguous right conferred by the proffered statute, the administrative
regulation is insufficient to confer a private right.  However, this Court finds Defendants'
reasoning unpersuasive.

Section 1983 does not create substantive rights; it merely serves as a vehicle to enforce
deprivations of "rights[,] privileges, or immunities secured by the Constitution and laws [of the
United States]."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 85 L. Ed. 2d 791
(1985); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002) ("§
1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*,
rights independently 'secured by the Constitution and laws' of the United States").  The Supreme
Court has further noted that cases like this one, regarding whether federal programs can be
privately enforced, frequently arise in the context of legislation enacted pursuant to Congress's
spending authority.  *See Gonzaga,* 536 U.S. at 279-282.  However, the Supreme Court and the
Sixth Circuit have held on more than one occasion that certain provisions of the Medicaid statute
can be enforced by its intended beneficiaries by actions brought pursuant to § 1983.  *Wilder v.
Virginia Hosp. Ass'n*, 496 U.S. 498, 508-10, 110 S. Ct. 2510, 110 L. Ed. 2d 455 (1990);
*Westside Mothers v. Haveman*, 289 F.3d 852, 863 (6th Cir. 2002); *Markva v. Haveman*, 317 F.3d

29

547, 553-554 (6th Cir. 2003); *Harris v. Olszewski*, 442 F.3d 456, 463 (6th Cir. 2006) ("Our

conclusion, moreover, comports with decisions of the Supreme Court, [Sixth Circuit Court of

Appeals], and other courts of appeals that have recognized privately enforceable rights under §

1983 stemming from similar statutory language in the Medicaid Act.")

In *Harris v. Olszewksi*, the Sixth Circuit held that Medicaid's freedom-of-choice

provision, 42 U.S.C. § 1396a(a)(23)(A), confers a private right that may be enforced under §

1983.  442 F.3d at 459.  In so holding, the Sixth Circuit further clarified the analysis required of

this Court when determining if a statute and its enabling regulations confer a privately

enforceable right under § 1983:

> In ascertaining 'whether Congress intended to create a federal right'...the
> [Supreme] Court has directed us to look at three factors... 'First, Congress must
> have intended that the provision in question benefit the plaintiff.'  In answering
> this initial inquiry, courts look for a statutory right or '*individual* entitlement' that
> is 'unambiguously conferred,' by the use of 'rights-creating language.'  An
> 'aggregate focus' unconcerned 'with whether the needs of any particular person
> have been satisfied' is insufficient; the statute must be 'phrased in terms of the
> persons benefited,' and use 'individually focused terminology.'  'Second, the
> plaintiff must demonstrate that the right assertedly protected by the statute is not
> so vague and amorphous that its enforcement would strain judicial competence.'
> 'Third, the statute must unambiguously impose a binding obligation on the States.
> In other words, the provision giving rise to the asserted right must be couched in
> mandatory, rather than precatory, terms.'  These three inquiries do not end the
> matter, however. 'Even after' a plaintiff demonstrates 'that the federal statute
> creates an individually enforceable right in the class of beneficiaries to which he
> belongs[,]...there is only a rebuttable presumption that the right is enforceable
> under § 1983.'  'The defendant may defeat this presumption by demonstrating
> that Congress did not intend that remedy for a newly created right' by pointing to
> 'evidence of such congressional intent [that] may be found directly in the statute
> creating the right, or inferred from the statute's creation of a comprehensive
> enforcement scheme that is incompatible with individual enforcement under §
> 1983.'

*Harris v. Olszewski*, 442 F.3d at 461 (internal citations omitted).

This Court need not engage in all of the aforementioned analysis as the Sixth Circuit has

30

already held, albeit ambiguously, that a private right of action exist under § 1983 for

§§1396a(a)(8) and (a)(10).  *See Westside Mothers v. Haverman*, 289 F.3d 852, 862-63 (6th Cir.

2002) ("*Westside Mothers I*"); *Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2006)

("*Westside Mothers II*").  The plaintiffs in the *Westside Mothers* series of cases alleged that

defendants, director of the Michigan Department of Community Health, and the deputy director

of the Michigan Medical Services Administration, refused or failed to implement the Medicaid

Act, its enabling regulations, and its policy requirements.  *Westside Mothers I*, 289 F.3d at 855-

56.  However, the district court granted the defendants' motion to dismiss by holding that

Medicaid was only a contract between a state and the federal government, and that it lacked

jurisdiction over the suit because Michigan was the real defendant, and therefore possessed

sovereign immunity against the suit.  *Id.* at 857.  In *Westside Mothers I*, the Sixth Circuit Court

of Appeals reversed the lower court, although focusing predominately on jurisdictional grounds,

the Court of Appeals also considered "whether there is a private right of action under § 1983" for

the alleged noncompliance with the Medicaid Act.  *Id.* at 862-863.  The Sixth Circuit proceeded

to broadly apply a precursor [6] of the above enumerated test, and ultimately indicated that

---

        [6] The analysis employed by the Sixth Circuit relied on the framework set forth in
*Blessing v. Freestone*, 520 U.S. 329, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997), which was the
predominate analysis prior the analysis announced by the Supreme Court in *Gonzaga*.  *Westside
Mothers I* was decided using the *Blessing* framework.  *Blessing* espoused a similar three part
analysis to determine whether a statute creates a right privately enforceable under § 1983: (1) the
statutory section must show an intent "to benefit the putative plaintiff;" (2) the statute must set a
"binding obligation on a government unit, as opposed to "merely expressing a congressional
preference;" and (3) the interest asserted by a plaintiff must not be so "vague and amorphous"
that enforcement of the statute "would strain judicial competence."  The Sixth Circuit "has
recognized that the *Gonzaga* decision has altered the landscape of § 1983 claims.  The courts of
this circuit have continued to apply the three-factor *Blessing* test, albeit acknowledging that
*Gonzaga* clarified application of the first 'benefit' factor and underscored that the central focus
of this factor should be on whether the statutory provision contains 'rights-creating' language

"[p]laintiffs have a cause of action under § 1983 for alleged noncompliance with the screening and treatment provisions of the Medicaid Act", and remanded the case to the court below.  *Id.* at 863.  On remand, the district court granted in part and denied in part the defendants' second motion to dismiss pursuant to Rule 12 (b)(6).  *Westside Mothers II*, 454 F.3d at 537.

Specifically, the district court reconsidered whether specific provisions of the of the Medicaid Act created enforceable rights under § 1983.  *Id.*  In so doing, the district court examined whether §§ 1396a(a)(8) and (a)(10) create enforceable rights in plaintiffs, in light of the then recent *Gonzaga* ruling.  *Westside Mothers v. Olszewski*, 368 F.Supp. 2d 740, 757-63 (E.D. Mich. 2005).  With respect to the subject statutory provisions, and relying upon the Sixth Circuit's previous analysis utilizing the *Blessing* factors, and the Supreme Court's ruling in *Wilder* (regarding a similar provision of the Medicaid Act), the district court concluded that the plaintiffs may sue the defendants under 42 U.S.C. § 1983 to obtain the medical assistance for which they qualify:

> Likewise [comparing statutory language of the Medicaid provision examined in *Wilder*], § 1396a(a)(8) states that Michigan's state plan "must provide that all individuals wishing to make application for medical assistance under the plan shall have an opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  Here, the statutory provision refers to identifiable benefits in the form of "medical assistance" and the language refers to eligible individuals, providing that the States must provide an opportunity for "all individuals wishing to make application for medical assistance."  The text goes on to require State plans to furnish "medical assistance" "with reasonable promptness" to those who make application and who are eligible. Similarly, § 1396a(a)(10) requires that Michigan's plan "provide for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17) and (21) of 1396(d)(a)... to all individuals [who qualify]."...Although this language is not the type of rights conferring

critical to showing the requisite congressional intent to create new rights.  *Johnson v. City of Detroit*, 446 F.3d 614, 621 (6th Cir. 2006).

> language that would undoubtedly foreclose debate on this issue, it is sufficient in light of the Supreme Court's continued approval of *Wilder*. This provision of the Medicaid Act refers to an identifiable benefit of "medical assistance" and identifies individuals who qualify as the benefited class. While a different conclusion might result if this court were writing on a clean slate, *Gonzaga*'s approval of § 1396a(a)(13) in *Wilder* results in the conclusion that Plaintiffs may sue Defendants under 42 U.S.C. § 1983 to obtain the "medical assistance" for which they qualify.

*Id.* (internal citation omitted). After holding that an enforceable right exists under § 1983, the district court examined the scope of the enforceable rights to "medical assistance." *Id.* at 762-770. During which, the district court held that the term "medical assistance" as used in 1396a(a)(8) and (a)(10) "does not require the direct provision of medical services," but rather "financial assistance." *Id.* at 765. The district court then dismissed the plaintiffs' claims relative to these provisions as the defendants had provided financial assistance as required by the statute. *Id.*

The case was again appealed to the Sixth Circuit, where the plaintiffs argued that the district court's reconsideration of whether the screening and treatment provisions of the Medicaid Act create enforceable rights under § 1983 was barred by the law of case doctrine, and the district court therefore had no power to deviate from the *Westside Mothers I* holding. *Westside Mothers II*, 454 F.3d at 539. In *Westside Mothers II*, the Sixth Circuit held that the law of the case doctrine did not foreclose the lower court from reconsidering whether a right of action under § 1983 to enforce the subject provisions. *Id.* In reviewing the district court's holding the court of appeals again examined §§1396a(a)(8) and 1396a(a)(10):

> The most reasonable interpretation of §1396a(a)(8) is that all eligible individuals should have the opportunity to apply for medical assistance, i.e. financial assistance, and that such medical assistance, i.e., financial assistance, shall be provided to the individual with reasonable promptness. The most reasonable

33

> interpretation of § 1396a(a)(10) is that medical assistance, i.e., financial
> assistance, must be provided for at least the care and services listed in paragraphs
> (1) through (5), (17) and (21) of § 1396(d)(a).  The regulations that implement
> these provisions also indicate that what is required is a prompt determination of
> eligibility and prompt payment to eligible individuals to enable them to obtain
> necessary medical services.

*Id.* at 540 (internal citations omitted).  The appellate court then affirmed the district court's

dismissal of the claim for violations of the subject provisions, but modified the judgment to a

dismissal "without prejudice to the filing of a motion to amend along with a proposed

amendment to the complaint."  *Id.* at 541.

In light of the *Westside Mothers*' analysis of the §§1396a(a)(8) and 1396a(a)(10)**,** this

Court is persuaded that a private cause of action exists under § 1983.  These cases, when read in

concert, reject the Defendants' argument that Plaintiffs only rely on pre-*Gonzaga* authority, and

appear to demonstrate that at a minimum these provisions support a private right of action under

§ 1983 in regards to "medical assistance, i.e., financial assistance, and that such financial

assistance will be provided to the individual with reasonable promptness" and that "medical

assistance, i.e. financial assistance, must be provided for at least the care and services listed in

paragraphs (1) through (5), (17) and (21) of § 1396d(a)."  *Westside Mothers II*, 454 F.3d at 540.

The Sixth Circuit further enunciated, "that the regulations that implement these provisions also

indicate that what is required is a prompt determination of eligibility and a prompt payment to

eligible individuals to enable them to obtain necessary medical services,"  *Id.* (citing 42 C.F.R.

§§ 435.911, and 435.930); and in a later opinion approvingly cited *Sabree v. Richman*, 367 F.3d

180, 190, 192 (3d Cir. 2004), as holding that 42 U.S.C. § 1396a(a)(8) - as creating an

enforceable right under § 1983.  *Harris v. Olszewksi*, 442 F.3d at 463; *see also Brown v.*

*Tennessee Dept. of Finance and Admin.*, 561 F.3d 542, 543-545 (6th Cir. 2009)(wherein the

34

Sixth Circuit recently summarized the holding of *Westside Mothers II*.).  Having concluded that §§1396a(a)(8) and 1396a(a)(10) of the Medicaid Act create rights privately enforceable under § 1983, the Court now examines whether the supplementing regulations are equally enforceable.

(ii)      Duty imposed by 42 C.F.R. §§ 435.930(b) and .916(c)

As to Count I, Plaintiffs maintain that 42 C.F.R. § 435.930(b) is also individually enforceable under § 1983, as its "effectuates the express mandate of the controlling statute and provides the specifics for implementing obligations that are imposed generally by the controlling statute." [Resp. to Mot. for Summ. J., p. 10].  Plaintiffs further contend that the Sixth Circuit has interpreted this regulation as requiring state agencies to continue to provide Medicaid to an individual whose eligibility under one Medicaid category has ended, while the state determines whether the individual is eligible under the other categories.  Finally, Plaintiffs submit that the Defendants' own policies support such an outcome based on specific sections of the PEM.  In response, Defendants maintain that the regulations are unable to support a private right of action under § 1983, in the absence of a clear and unambiguous mandate.

"Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 271, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001) ("Agencies may play the sorcerer's apprentice but not the sorcerer himself.").  It is undisputed that a private plaintiff "cannot enforce a regulation through a private cause of action generally available under the controlling statute if the regulation imposes an obligation or prohibition that is not imposed generally by the controlling statute." *Ability Ctr. v. City of Sandusky*, 385 F.3d 901, 906 (6th Cir. 2004); *see e.g. Caswell v. City of Detroit Hous. Comm'n*, 418 F.3d 615, 620 (6th Cir. 2005)

35

("Because neither we nor Caswell can point to a specific statutory provision in the Housing Act that confers a right relevant to DHC's alleged violation of 24 C.F.R.§ 982.311(b), Caswell cannot pursue his claim under § 1983."). However, "[o]n the other hand, if the regulation simply effectuates the express mandates of the controlling statute, then the regulation may be enforced via the private cause of action available under the statute." *Ability Ctr.*, 385 F.3d at 906 ; *Harris*, 442 F.3d at 465 ("Because '[a] Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well.").

Having concluded that §§1396a(a)(8) and 1396a(a)(10) impose such a private right of action, this Court must now determine whether the supplementing regulations "effectuates the express mandates of the controlling statute." This Court finds that 42 C.F.R. § 435.930(b) and .916(c) effectuate and supplement the mandate of 42 U.S.C. 1936a(a)(8) and (a)(10), and are therefore enforceable through the private right of action available under § 1983. The subject regulation requires that a state medicaid agency "must ... [c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible," 42 C.F.R. § 435.930(b), and derives its enforcement authority directly from the controlling statute. This regulation merely supplements and defines the broad mandate of §§ 1396a(a)(8) and (a)(10) – *i.e.* to furnish medical assistance with reasonable promptness – by further defining the duration and scope of the promised medical assistance. *See Doe, 1-13 v. Chiles*, 136 F.3d 709, 717 (11th Cir. 1998) (finding that § 435.930(b) "further define[s] the contours of the statutory right to reasonably prompt provision of assistance."); *Westside Mothers II*, 454 F.3d at 540 ("The regulations [including § 435.930(b)] that implement these provisions [§§1396a(a)(8) and (a)(10)] also indicate that what is required is a prompt determination of eligibility and a prompt payment

36

to eligible individuals to enable them to obtain the necessary medical services."). The subject regulations – by requiring continued aid and pretermination reviews – ensure that eligible individuals are not denied prompt Medical assistance to which they are entitled. In view of the foregoing, the Court finds Defendants' opposition to the enforcement of § 435.930(b) and .916(c) unpersuasive.

(iii)    Merits

Having resolved Defendants' threshold challenges to the preliminary injunction, the Court now concludes that Plaintiffs have demonstrated a substantial likelihood of success on the merits of Count I. Defendants' pattern and practice of terminating Plaintiffs' Medicaid benefits without first determining whether they are eligible for Medicaid benefits under disability-based categories, violates Plaintiffs' rights under 42 U.S.C. § 1396a(a)(8) and (a)(10), and the attendant regulations. The federal Medicaid statutes require state Medicaid agencies to "provide that all individuals wishing to make application for medical assistance under the [State Medicaid] plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). As noted above, the Plaintiffs' enforceable rights under this statute incorporate the regulations that it implements, and therefore, the agency must also "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." 42 C.F.R. § 435.930(b). Indeed, this supplementing regulation most certainly condemns Defendants' practice of terminating Plaintiffs' Medicaid because they no longer qualify under FIP-related eligibility, without first determining if these individuals meet any of the other categories of Medicaid eligibility. As such, the Defendants' appropriate course of conduct after determining that Plaintiffs were no longer eligible for FIP-related categories was

37

to conduct an automatic review of other Medicaid categories, without the re-application for Medicaid assistance.

Further buttressing the above conclusion, the Court relies on the reasoning of *Crippen v. Kheder*, where (after being confronted with facts similar to those at bar) the Sixth Circuit held that persons who receive benefits under the Medicaid Act are entitled to the continued receipt of Medicaid benefits pending a final determination of ineligibility. 741 F.2d 102, 106-07 (6th Cir. 1984). In that case, the plaintiff's eligibility for SSI benefits was terminated when the defendants Michigan Medicaid agencies revoked the Adult Foster Care license for the home in which she resided. *Id.* at 104. The defendant agency notified the plaintiff that her Medicaid benefits would be terminated because her SSI benefits had been terminated, and that she could seek a hearing, whereupon her benefits would continue until the hearing was held. *Id.* In lieu of requesting a hearing, plaintiff reapplied for Medicaid and filed a class action suit "seeking declaratory and injunctive relief against the Department's policy of automatically terminating individuals from medicaid solely upon receipt of information that SSI benefits have been terminated without making prior determination of the individual's eligibility as a medically needy person." *Id.* The plaintiffs' class, similar to those in the present matter, asserted that defendants' policy ran afoul of its responsibility to "continue to furnish medicaid regularly to all eligible individuals until they are found to be ineligible..." *Id.* (citing 42 C.F.R. § 435.930(b)).

After refuting the state agency's arguments, many of which are similar to those made in the present action, the *Crippen* Court held:

Where the only basis for a recipient's eligibility assistance has been eliminated it logically follows that eligibility must cease. The regulations at issue here, however, provide alternative bases for medicaid eligibility... The most that was determined by the Department was that one of those bases for medicaid eligibility, i.e., the receipt of SSI benefits, had been

38

eliminated.  Thus [plaintiff] was no longer eligible for medicaid as a categorically needy person.
There remained the possibility, indeed, in this case the *fact*, that she was still eligible as a
medically needy person.  As noted earlier, the Department made no effort to determine
[plaintiff's] eligibility for medicaid as a medically needy person before terminating her from the
program.  Thus the Department could not have found [plaintiff] to be ineligible for medicaid
prior to terminating her from the program as it was required to do by 42 C.F.R. § 435.930(b).

*Id.* at 106.

Likewise, especially in light of the similarity of circumstances, the Court is bound to

conclude that Plaintiffs' in the present case are entitled to continuing Medicaid benefits while the

Defendants review the Plaintiffs' eligibility under the disability-based or SSI-related Medicaid

categories. The factual scenario that confronted the *Crippen* Court is the mirror image of that

facing the undersigned.  In that matter, the Sixth Circuit held – based primarily on the identical

regulation –  that plaintiffs' class was entitled to continuing Medicaid benefits once their SSI-

related benefits were terminated, until the agency determined whether they were entitled to

Medicaid benefits on other grounds.  In this action, the Plaintiffs are seeking continued Medicaid

benefits once their FIP-related eligibility has ended, until the agency has determined that they are

not entitled to Medicaid benefits under SSI or disability related categories.  Toward this end, the

Court similarly holds that the Defendants' termination of the Plaintiffs' FIP-related Medicaid

should trigger an automatic review of Plaintiffs' eligibility under other Medicaid categories.  *Id.*

at 107.  ("upon receipt of notice that an individual has been terminated from the SSI program, the

Department must promptly determine *ex parte* the individual's eligibility for medicaid

independent of his eligibility for SSI benefits.  While this determination is being made, the state

must continue to furnish benefits to such individuals."); *See also Massachusetts Assoc. of Older*

*Americans*, 700 F.2d at 753 ("these regulations require the state agency, upon receipt of

notification of an individual's termination from SSI, to reconsider the recipient's eligibility for

39

Medicaid benefits.  Pending this *ex parte* determination the state must continue to furnish such individuals with Medicaid benefits, and if it determines that an individual is ineligible, it must give notice and an opportunity for a hearing before termination.").

   Contrary to Defendants' assertions, the Court finds no persuasive reason to distinguish the holding of *Crippen*.  As resolved above, Defendants' contention that the *Crippen* Court's holding is *wholly* dependent on the HHS-issued regulations is without merit.  Although the *Crippen* Court did not specifically connect its holding to the statutory authority of §§1396a(a)(8) and 1396a(a)(10), other Sixth Circuit precedent has done so.  *See*, *e.g. Westside Mothers II*, 454 F.3d at 540.  This same authority rejects Defendants' other argument that certain *Crippen* dicta should bind this Court to conclude that no such statutory authority exists.  *See Crippen*, 741 F.2d at 104 ("As the parties concede, there is no specific regulation or section of the statute which covers this particular dispute.").  Defendants' arguments extend the dicta beyond its reasonable bounds.  This prefatory statement does not bind the Court to conclude that § 435.930(b) should not be enforced especially when this Court's previous analysis demonstrates otherwise.  Rather, this statement, when placed in the context of the overall opinion, simply illustrates that the appellate court was being called upon to interpret the statutory and regulatory law in the context of a particular fact situation that was not *explicitly* addressed by the legislature or regulatory agency.  If this Court were to read this sentence as Defendants urge, it would undermine the ultimate conclusion of the *Crippen* Court, which held – based partially on  § 435.930(b) – that "the Department's policy of automatically terminating the benefits of medicaid recipients solely because their SSI benefits have been terminated without determining whether they qualify as medically needy individuals *violates the regulations promulgated under the Social Security Act.*"

40

*Crippen*, 741 F.2d at 106-07 (emphasis added).

By no means should this ruling be considered unusual or unexpected as Defendants' own internal policies and procedures bear witness to the proper course of conduct. Specifically, the Program Eligibility Manual instructs caseworkers that "[m]ost terminations of FIP or SSI benefits must include an evaluation of MA eligibility..." [PEM 105, p. 4].  In this same vein, the PEM instructs caseworkers to "[c]onsider eligibility under all other MA-only categories before terminating benefits under a specific category." [*Id.*] The testimony of the Named Plaintiffs in this action demonstrate that the Defendants have failed to comply with not only their own internal procedures, but more importantly 42 U.S.C. 1936a(a)(8) and (a)(10) and its corresponding regulations. Contrary to Defendants' arguments, the requirement of a pre-termination review is not only limited to those whose SSI or disability-related eligibility has terminated, but this duty should be afforded "to individuals who qualified for Medicaid under *any eligibility category*."  *Massachusetts Association of Older Americans*, 700 F.2d at 753 (emphasis added); *see also Stenson v. Blum*, 476 F. Supp. 1331, 1339 (S.D.N.Y. 1979) *aff'd without opinion*, 628 F.2d 1345 (2d Cir.), *cert denied*, 449 U.S. 885, 101 S. Ct. 239, 66 L. Ed. 2d 111 (1980) ("Many of the Federal regulations relating to whether Medicaid payments should continue pending redetermination of eligibility are applicable to a recipient who previously has been eligible for Medicaid under any of the categories...").   In view of the foregoing analysis, the Court concludes that Plaintiffs have demonstrated a substantial likelihood of success on the merits as to Count I.

(b)    *Count II*

In Count II, Plaintiffs claim that Defendants must provide them with a meaningful, pre-

41

termination notice and opportunity to be heard, after the mandated review of eligibility is

complete.  Consistent with this request, Plaintiffs submit that after the Defendants have

determined that an individual is ineligible for all categories of Medicaid, then a pre-termination

notice should be sent to the recipient.  This notice, Plaintiffs claim, should detail the reasons for

the determination that he or she is no longer eligible for Medicaid, and include a hearing date if

one was requested.  Importantly, in addition to providing the legal and factual reasons why the

recipient is no longer eligible for Medicaid based on the particular category for which he or she

qualified in the past, recipients would also be provided an opportunity to be heard about their

eligibility for disability-based Medicaid categories.  In an effort to enforce these rights under 42

U.S.C. § 1983, Plaintiffs rely on the Due Process Clause of the Fourteenth Amendment.

Additionally, Plaintiffs find support under 42 U.S.C. § 1396a(a)(3) and its accompanying

regulations, namely, 42 C.F.R. § 431.206 - .211 (setting forth right to a hearing, and content of

notice requirements), .230 (maintaining service while awaiting hearing), and 435.919 (requiring

timely and adequate notice of proposed terminations, discontinuance, or suspensions of

Medicaid eligibility).  In response to Plaintiffs' arguments, Defendants submit that 1396a(a)(3)

unambiguously applies to individuals who have both applied for Medicaid and been denied

Medicaid, or applied and are still waiting for a decision. Because Plaintiffs have not applied for

"disability based benefits," Defendants aver that this provision is inapplicable to them.  Further,

Defendants state that "unless an individual applies and/or has an application denied for

disability-related Medicaid, there is no statutory entitlement to an opportunity to be heard on the

matter." [Def.'s Resp. to Prel. Inj., p. 5-6].  In their Motion to Dismiss, Defendants further argue

that the framework created by the regulations, and currently being carried out by Defendants,

42

provides greater procedural safeguards than are demanded by due process.  Finally, Defendants

provide that the type of notice which Plaintiffs are requesting does not fall within the scope of

the enforceable rights incorporated under 1396a(a)(3).

Prior to dealing with Defendants' contentions, the Court finds it useful to detail the

statutory and regulatory authority that form the basis of the Plaintiffs' requested relief.  42

U.S.C. § 1396a(a)(3) is the statutory foothold on which Plaintiff's regulatory support hinges:

A State plan for medical assistance must –

provide for granting an opportunity for a fair hearing before the State agency to
any individual whose claim for medical assistance under the plan is denied or is
not acted upon with reasonable promptness...

42 U.S.C. § 1393a(a)(3).

The regulations, in pertinent part, provide:

A notice required under § 431.206(c)(2), (c)(3), or (c)(4) of this subpart must
contain –
(a) A statement of what action the State ...intends to take;
(b) The reasons for the intended action;
(c) The specific regulations that support, or the change in Federal or State law that
requires, the action;
(d) An explanation of –
     (1) The individual's right to request an evidentiary hearing if one is
     available, or a State agency hearing; or
     (2) In cases of an action based on a change in law, the circumstances
     under which a hearing will be granted, and
(e) An explanation of the circumstances under which Medicaid is continued if a
hearing is requested.


42 C.F.R. § 431.210

....

The State or local agency must mail notice at least 10 days before the date of
action ....

42 C.F.R. § 431.211.

....

      (a) If the agency mails the 10-day or 5-day notice as required under § 431.211 or § 431.214 of this subpart, and the recipient requests a hearing before the date of the action, the agency may not terminate or reduce services until a decision is rendered after the hearing unless –
            (1) It is determined at the hearing that the sole issue is one of Federal or State law or policy; and
            (2) The agency promptly informs the recipient in writing that services are to be terminated or reduced pending the hearing decision.
      (b) If the agency's action is sustained by the hearing decision, the agency may institute recovery procedures against the applicant or recipient to recoup the cost of any services furnished the recipient, to the extent they were furnished solely by reason of this section.

42 C.F.R.§ 431.230.

....

      (a) The agency must give recipients timely and adequate notice of proposed action to terminate discontinue, or suspend, their eligibility or to reduce or discontinue services they may receive under Medicaid.

      (b) The notice must meet the requirements of Subpart E of Part 431 of this subchapter.

42 C.F.R. § 435.919.

      The dispute arising from Count II requires the Court to resolve whether the procedures employed by the Defendants are sufficient to satisfy the constitutional, statutory, and regulatory requirements of due process, specifically, sufficient notice, and the right to a pre-termination hearing.

            (i)      *Statutory and Regulatory Requirements*

      Defendants' primary challenge to the proposed injunctive relief is that neither §

44

1396a(a)(3) or its attendant regulations support the relief that Plaintiffs seek.  In arriving at this conclusion, Defendants argue that the statutory and regulatory language narrows the scope of the enforceable right to individuals who have both applied for Medicaid and been denied Medicaid. Because Plaintiffs (individuals receiving Medicaid benefits based on FIP) neither applied for, or were denied, *disability-related* Medicaid, Defendants claim that these provisions do not confer "a right to a pre-termination opportunity to be heard on a matter that has neither been the subject of a Medicaid application nor a denial by Defendants." [Defs.' Mot. for Summ. J., p. 19].  In regards to Count II, the Court concludes that Plaintiffs have demonstrated a substantial likelihood of success on the merits.

42 U.S.C. § 1396a(a)(3) requires that state Medicaid plans must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."  As noted above, the statute's attendant regulations require the state agency to notify applicants of the right to obtain a hearing and the method of obtaining one when the applicant first applies to Medicaid, *and* when any action is taken which affects the applicant's claim.  42 C.F.R. § 431.206.  The regulations also govern the specific contents of the notice, which must include: (1) a statement of the actions being taken, (2) reasons for the intended actions, (3) specific regulations that support or require the intended action, and (4) an explanation of the right to a hearing, and under what circumstances Medicaid benefits will continue during the pendency of the requested hearing.  42 C.F.R. § 431.210.  This notice must, unless an exception applies, be mailed "at least 10 days before the date of action."  § 431.211.  It is uncontested that Plaintiffs, as Medicaid beneficiaries, are entitled to enforce their § 1396a(a)(3) right to a "fair hearing" under § 1983.  *Gean v.*

45

*Hattaway*, 330 F.3d 758, 772-773.

Plaintiffs allege, and this Court agrees for the purposes of the preliminary injunction motion, that the notice Plaintiffs received was insufficient because it only detailed the reasons why they were no longer eligible for FIP-related Medicaid, which was not the "sole" basis for terminating their Medicaid.  By way of example, Named Plaintiff Chande Crawley demonstrates such insufficient notice.  On July 18, 2009, DHS notified Crawley that, effective 7-30-2008, her Medicaid Coverage will be cancelled; under the heading, "the reason for this action," the letter simply states "child is age 18 or 19 and has completed highschool." [7-18-2008 Notice of Case Action, Prel. Inj., Ex. A].  The reason for the termination of Medicaid benefits was restricted to the termination of FIP-related benefits, and as such, Plaintiffs were unable to dispute the factual reason given by the Defendants.  In so doing, the Defendants denied Crawley, and similar situated individuals, the right to a "fair hearing" under § 1396a(a)(3). More specifically, this insufficient  notice renders § 435.919's[7] requirement of "timely and *adequate notice* of proposed action to terminate, discontinue, or suspend eligibility" otiose.  Such notice can hardly qualify as "adequate" because it does not include a determination of eligibility on all relevant grounds, thereby undermining any opportunity for a fair hearing.  A truly fair hearing would allow Plaintiffs an opportunity to challenge the termination by proving that they are eligible for Medicaid based on disability.  *Stenson v. Blum*, 476 F. Supp. at 1339.

The Court also finds that Defendants' distinction based upon the failure to apply for

---

[7]  Defendants correctly point out that § 1396a(a)(3) is not among the list of sections of the Act implemented by 42 C.F.R. § 435.919.  *See* 42 C.F.R. § 435.3.  However, the Court notes that § 435.919(b) does expressly refer back to Subpart E of Part 431 (regarding the notice requirements), which does implement the sections of the Act dealing with an opportunity for a fear hearing.  *See* 42 C.F.R. § 431.200.

*disability*-based benefits unavailing. The Court sees no reason to distinguish between termination

of disability-based benefits on an initial application, and the termination of FIP-based assistance.

Both events implicate the denial of Medicaid benefits, and as such should necessitate notice and

hearing rights under 42 U.S.C. § 1396a(a)(3). The Court is cognizant that the determination

based on disability, under the usual circumstances, will require additional medical verification.

However, the Defendants' obligation to conduct a pretermination review is not limited by the

type of application that a recipient initially filed.  *See Crippen*, 741 F.2d at 105-06;

*Massachusetts Association of Older Americans*, 700 F.2d at 752.  In any event, it appears from

the record before this Court that all applicants fill out the same initial DHS Assistance

Application 1171 form;  PEM, p.2, on which an applicant is only required to check a box labeled

"medical assistance" or "medical" and is not required to designate Medicaid eligibility

categories.  Fatal to Defendants' argument, there is no separate application for "disability-based

Medicaid."  In this same vein, Defendants' internal procedures appropriately require the trained

caseworkers, and not potential Medicaid recipients, to determine eligibility:

> **Choice of Category**
> Persons may qualify under more than one MA category.  Federal law gives them
> the right to the most beneficial category.  The most beneficial category is the one
> that results in eligibility or the least amount of excess income...
> However, clients are not expected to know such things as:
>> * Ine[]ligibility for a FIP grant does not mean MA coverage must end...
>> * The most beneficial category may change when a client's circumstances
>>    change.
> Therefore, you must consider all the MA category options in order for the client's
> right of choice to be meaningful.

 [PEM 105, p.2., Compl., Ex. I].  Defendants' own internal policies usually place on the

caseworkers the burden of requesting the information or documents that are needed to determine

whether a particular eligibility criterion has been met.  PAM 115, p.12; PAM 130, p.1.  As such,

47

Plaintiffs have demonstrated a substantial likelihood of success on the merits as it relates to Count II.

(ii)      <em>Constitutional Requirements</em>

In view of the foregoing analysis, the Court quickly dispenses with the parties' due process contentions having resolved the matter on statutory grounds.  *Boatman v. Hammons*, 164 F.3d 286, 289 (6th Cir. 1998) ("Plaintiffs also assert that Medicaid recipients are entitled to written notice under the Due Process Clause of the Fourteenth Amendment ... Since we have resolved this issue on plaintiffs' statutory claim, we need not address the constitutional question.").

(2)      <u>Irreparable Harm to the Plaintiff</u>

The plight of Chande Crawley, Penny Carson, Linda Birmingham and other similarly situated individuals unequivocally demonstrate the irreparable harm that will ensue if a preliminary injunction is not issued in this matter.  "By hypothesis, a welfare recipient is destitute, without funds or assets. [] Suffice it to say that to cut off a welfare recipient in the face of []'brutal need' without a prior hearing of some sort is unconscionable, unless overwhelming considerations justify it." *Goldberg v. Kelly*, 397 U.S. 254, 261, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).  Echoing the Supreme Court, this Court does not question the sufficiency of the hearings procedure on constitutional grounds, but stresses the vital necessity that Medicaid programs provide, and that a "controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." *Id.* at 264.  Toward this end, "[f]or qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and *medical care*." *Id.* (emphasis added).

48

The Named Plaintiffs in this action will undoubtedly – if not already – suffer irreparable harm because they are receiving or will receive medical benefits that are far below those provided under Medicaid, to which they are entitled.  In the case of some Plaintiffs, who have serious medical disabilities, a lapse in Medicaid benefits could result in permanent injury or even death.  As most clearly demonstrated in the lives of the Named Plaintiffs, the unwarranted lapse in Medicaid coverage has lead to severe restrictions in medically necessary healthcare which they otherwise are unable to afford.  *See Markva v. Haveman*, 168 F. Supp. 2d 695, 718-719 (E.D. Mich. 2001), *aff'd* 317 F.3d 547 (6th Cir. 2003) (citing cases where "Other courts have held that delay or denial of Medicaid benefits can amount to irreparable harm."); *Massachusetts Association of Older Americans*, 700 F.2d at 753 ("Plaintiffs presented affidavits of several class members who, since termination, have been financially unable to obtain necessary medical treatment.  Termination of benefits that causes individuals to forgo such necessary medical care is clearly irreparable injury.").

While the Defendants concede that a denial of benefits may rise to the level of irreparable harm, they contest that the instant facts do not demonstrate such an injury.  In their view, Plaintiffs' harm is self-imposed because Plaintiffs did not take advantage of the appeal process which would have extended their benefits for the duration of the appeal.  Similarly, Defendants aver that the instant claims are redressable pursuant to their policy of retroactive coverage from the date when the disabled individual applied for disability-based benefits.  However, the previous portions of this order refute these contentions.  To begin, Plaintiffs cannot be expected to take full advantage of an appeals process where the commencing notice only covers a single basis for Medicaid ineligibility.  As such, the Plaintiffs were unaware that they could even bring

49

evidence demonstrating that they qualified for Medicaid under the disability-based benefits.  Nor

is the Court persuaded by Defendants' reliance on a retroactive coverage policy.  In effect, what

Defendant argues, and the record substantiates, is a system where once an individual's FIP-based

benefits end, he or she is encouraged to reapply (in most cases using an identical form) with an

emphasis on their disability.  Yet this system subverts the purpose of a *pre-termination* review,

which is to prevent unwarranted lapses in Medicaid coverage.

The heart of the irreparable injury analysis requires "the party seeking injunctive relief ...

[to] show that there is no other adequate remedy at law."  *U.S. v. Miami University*, 294 F.3d

797, 816 (6th Cir. 2002). Here, it is undeniable that the unpaid bills, loss of needed medical

assistance, and ultimately poor health suffered by Plaintiffs, cannot be adequately addressed by

the promise of future Medicaid coverage.  In this same vein, the state's Eleventh Amendment

Immunity bars any award of monetary damages against the Defendants.  *Markva*, 168 F. Supp.

2d 719 ("There is no adequate remedy at law for individuals suing a state in federal court

because the Eleventh Amendment bars the award of damages.").

(3)    Threat of Harm to Plaintiffs Outweighs Threat of Harm to the
       Defendants/Third Parties

This third consideration also weighs in favor of the Plaintiffs.  Generally speaking, the

relief sought requires Defendants to provide Medicaid to Plaintiffs while Defendants determine

eligibility for SSI-related categories.  This Court would be remiss not to acknowledge that the

requested relief would have some impact on the state budget; however, principles of equity and

due process are not without their cost.  And in this instance, the balance of the harms weighs in

favor of issuing a preliminary injunction.

The challenge to the relief requested rest primarily on administrative delays and costs

50

that Defendants forecast as a result of the requested injunctive relief.  Particularly, Defendants predict that the injunctive relief will require extended/unwarranted coverage of individuals who are not in fact disabled, while their eligibility is being determined.  Similarly, Defendants posit that many applicants will disingenuously claim disability and needlessly prolong the determination period to extend their benefits by not providing verifying medical data.  This in turn will have the effect of increasing delays and depriving resources from applicants who in reality are qualify for SSI-related Medicaid benefits.  All of which, Defendants estimate, will cost an additional $1.4 to $1.7 million each month.[8]

While the problem of additional expense must be kept in mind, it does not justify denying Plaintiffs a right to meaningful notice and the continued receipt of Medicaid benefits to which they are entitled pending a final determination of disability-based eligibility.  *Massachusetts Association of Older Americans*, 700 F.2d at 754 ("Defendant's claimed injury from the loss of public funds to ineligible individuals is, in reality, no injury at all, just a remote possibility of injury.  Thus the harm to plaintiffs far outweighs that of defendant and preliminary injunction must issue.").  Many of the purported harms that Defendants assert are well-within their power to remedy.  To start, Defendants exert substantial control over the length of time benefits might be continued pending a review of disability eligibility.  The Defendants' existing policy and concession of the Plaintiffs, both provide that Medicaid can be terminated if an individual has not cooperated in responding to a request for additional information within a reasonable time.

_____

[8]  These projected calculations appear to rest on the assumption that *all individuals* terminated from FIP-related categories (approximately 4,000), will "allege disability to continue their Medicaid coverages pending a determination on the disability claim." [Affidavit of Neil Oppenheimer, Defs.' Resp. to Prel. Inj., Ex. 3].

DHS PAM 130, p. 4 (Allowing the applicant 10 calender days to provide verifying information, if neither the caseworker or applicant does so – with the possibility of at least one to three extensions – the benefits may be terminated or denied.).  Also mitigating Defendants' concern are the federal regulations which require the Medicaid agency to conduct a review of eligibility when a change in a recipient's circumstances is anticipated.  42 C.F.R. § 435.916(c).  Consequently, Defendants should begin to review the Medicaid recipient's file to determine their eligibility, and if needed request additional verification, in advance of the date that the recipient's eligibility under their current Medicaid category is expected to end.  Further, many of the Defendants' financial projections rest upon an apparent inflation of the relief requested.  The requested relief is not applicable to *all* individuals terminated from FIP-related categories (approximately 4,000), but rather only those who have indicated or demonstrated a claim of disability (approximately 200).  Accordingly, the Court finds that the threatened harm to the Plaintiffs outweighs the threatened harm that the injunction may inflict upon the Defendants or third parties.

(4)   <u>Public Interest</u>

On this final consideration, the Court finds that the public interest is served by the issuing of a preliminary injunction.  It is evident that the public interest would be served if individuals who were rightfully entitled to Medicaid benefits actually received those benefits without unwarranted interruption or unnecessary delay.  It logically follows – based on this above analysis – that the public interest is best served when the state agency endowed with the duty of dispensing Medicaid benefits to deserving individuals is in compliance with the federal Medicaid statutes and their attendant regulations.

52

Weighing the factors set forth above, the Court concludes that Plaintiffs are entitled to a preliminary injunction.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Certify a Class **[Docket No. 5, filed Sept. 19, 2008]** is **GRANTED**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss and/or Summary Judgment **[Docket No. 15, filed Oct. 16, 2008]** is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction **[Docket No. 6, filed Sept. 19, 2008]** is **GRANTED**.

**IT IS DECLARED**:

(A) Defendants are preliminarily enjoined from violating Plaintiffs' and similarly situated individuals rights under 42 U.S.C. § 1396a(a)(8) and (a)(10)(A) as interpreted and implemented by 42 C.F.R. § 435.930(b), and federal Medicaid law, 42 U.S.C. § 1396a(a)(3), as implemented by 42 C.F.R.§ 431.206 - .211;

(B) Defendants are preliminarily enjoined from failing to continue Medicaid to each of the Named Plaintiffs and similarly situated class members, unless and until they have reviewed and ruled out the Plaintiff's eligibility for Medicaid under all eligibility categories, including disability related categories, and specifically require that before terminating Medicaid eligibility the Defendants must:

(1) Conduct an individual *ex parte* review of each Named Plaintiff's, and similarly situated class member's DHS case file and information available

53

electronically from the Social Security Administration to determine whether there is information indicating that they have a medical condition or disability that prevents them from working – including information that they are applying for or pursuing SSI or Social Security disability benefits,

(2) If their continued eligibility is not verified by the *ex parte* review, identify and request additional information that may be needed to evaluate eligibility under other Medicaid categories, including disability-based categories, and then,

(3) Take action to initiate termination of the individual's Medicaid only if the individual has not cooperated in responding to Defendants' request to the individual for additional information within a reasonable time, or if the information available to Defendants following their efforts to obtain all necessary information establishes that the Named Plaintiff or class member is not eligible for Medicaid under any of the Michigan Medicaid eligibility categories, including disability based categories.

(C) Defendants are preliminarily enjoined from initiating termination of Medicaid to the Named Plaintiffs and class members without first providing them with a meaningful pre-termination notice and opportunity to be heard regarding the proposed termination of their Medicaid, including written notice that:

(1) details the factual reasons why their eligibility ended under the category for which they previously had been eligible and the policy items under which the eligibility criteria they did not meet are spelled out;

(2) details the factual reasons why they are not eligible under other relevant eligibility categories, including disability-based categories, and the policy items under which the eligibility criteria they failed to meet are spelled out;

54

(3) an explanation of their right to a pre-termination hearing if DHS receives their

original hearing request before the date that their Medicaid will in fact end.

**IT IS FURTHER ORDERED** that Proposed Intervenor Brittany Lockert's Motion to

Intervene as Plaintiff and Class Representative **[Docket No. 24, filed May 7, 2009]** is

**GRANTED**.

**IT IS FURTHER ORDERED** that Proposed Intervenor's Motion for *Ex Parte*

Temporary Restraining Order and Preliminary Injunction **[Docket No. 25, filed May 7, 2009]** is

**MOOT**.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  May 14, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on May 14, 2009, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager